# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| | ) | **Case No. 15-_____ (\_\_\_)** |
| **JW RESOURCES, INC.,** *et al.*,[1] | ) | **(Jointly Administered)** |
| | ) | |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND BUSINESS FORMS, (III) WAIVING CERTAIN REQUIREMENTS OF THE UNITED STATES TRUSTEE, AND (IV) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B)**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby move this Court (the **"Motion"**) for entry of interim and final orders (respectively, the "**Interim Order**" and the "**Final Order**"), in substantially the forms attached hereto as **Exhibit B** and **Exhibit C**, (i) authorizing and approving the Debtors' continued use of its existing cash management system (the "**Cash Management System**"), (ii) authorizing the Debtors to continue using the prepetition bank accounts and business forms, (iii) waiving certain requirements set forth by the United States Trustee for Region 8 (the "**UST**"), and (iv) waiving the requirements of 11 U.S.C. § 345(b) with respect to the Debtors' deposit practices. In support of this Motion, the Debtors respectfully state:

---

[1] The Debtors in this Chapter 11 Case are (with the last four digits of their federal tax identification numbers in parentheses): JW Resources, Inc. (6400), Straight Creek Coal Mining, Inc. (9073), SCRB Properties, Inc. (1609), and SCRB Processing, Inc. (6470).

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are Sections 105(a) and 345 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3. As of the date hereof, no creditors' committee, trustee or examiner has been appointed in this Chapter 11 Case.

**BACKGROUND**

4. The Debtors commenced chapter 11 cases under which they are seeking joint administration (the "**Chapter 11 Cases**"), by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 28 and 30, 2015 (the "**Petition Date**"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their affairs as debtors-in-possession.

5. The Debtors are U.S. producers of thermal coal with mineral reserves, mining operations and coal properties located in the Central Appalachian regions of Kentucky. By and/or through these operations, the Debtors supply different qualities of coal to its customers.

6. JW Resources, Inc. ("**JW Resources**") is the parent and sole shareholder of SCRB Properties, Inc., Straight Creek Coal Mining, Inc. and SCRB Processing, Inc.

7. JW Resources acquired its assets and business operations from Xinergy Corp. in February, 2013 (the "**Straight Creek Acquisition**"). The Debtors' business operations comprise what is known as the "Straight Creek" operations located in Bell, Leslie and Harlan Counties,

Kentucky, and the "Red Bird" operations located in Bell, Leslie, Knox, and Clay Counties, Kentucky.

8. Following the Straight Creek Acquisition, there has been a decrease in the demand for coal and a dramatic increase in the cost of mining and processing coal, due in part to burdensome governmental regulations, with the spot price of coal per ton decreasing by 26% through April 2015. These factors have contributed to the Debtors' inability to service its secured debt and to sustain its business operations outside of the protections of the Chapter 11 Cases.

9. Debtors have been unable to obtain needed additional funding from their existing secured lenders, equity holders or other third-parties. In order to maximize the value of the Debtors' assets for the benefit of all stakeholders, the Debtors retained Energy Ventures Analysis, Inc. ("**EVA**") as their investment bankers to pursue a sale of substantially all of the assets of the Debtors as part of the Chapter 11 Cases. Accordingly, the Debtors will file a motion seeking to sell substantially all of their assets through an open auction process under section 363 of the Bankruptcy Code.

10. In the ordinary course of business, the Debtors maintain six (6) bank accounts (collectively, the "**Bank Accounts**") at Wells Fargo and Fifth Third Bank (collectively, the "**Banks**"). Four (4) of the Bank Accounts formerly served as payroll accounts and operating accounts. Two (2) of the Bank Accounts serve as disbursement accounts. A true and correct list of the Bank Accounts, including the Banks, each Bank's address and the last four digits of the account numbers, is attached hereto as **Exhibit A**. On or about June 19, 2015, the Debtors' senior secured lender exercised its rights under a certain Deposit and Control Agreement among the parties, resulting in all disbursements made by the Debtors being pre-approved in a Case

3

Management Process similar to what is being proposed in the motion for use of cash collateral and to obtain debtor-in-possession financing filed by the Debtors in these Chapter 11 Cases.

11. Additional information regarding the Debtors' businesses, capital structure, the circumstances leading to the Chapter 11 Cases are contained in the *Debtors' Declaration in Support of First Day Motions* (the "**First Day Declaration**").

## RELIEF REQUESTED

12. By this Motion, the Debtors hereby seek entry of an order (i) authorizing and approving the Debtors' continued use of its existing cash management system, (ii) authorizing the Debtors to continue using the prepetition bank accounts and business forms and (iii) waiving the requirements of 11 U.S.C. § 345(b) with respect to the Debtors' deposit practices. In connection with this relief, the Debtors also request a waiver of certain Operating Instructions and Reporting Requirements for Chapter 11 Cases (the "**UST Guidelines**") established by the UST that require the Debtors to close all prepetition bank accounts and open new accounts designated as Debtors-in-possession accounts. However, to address the intent of the UST Guidelines, the Debtors will maintain their books and records so as to provide a clear line of demarcation between prepetition and postpetition transactions and operations, and take such other steps as may be necessary to assure that there is no postpetition payment of prepetition claims (except to the extent otherwise authorized by this Court).

## BASIS FOR RELIEF

A. **Request for Authority to Continue Using the Debtors' Existing Cash Management System**

13. The Debtors' Cash Management System enables the Debtors to control and monitor corporate funds, ensure cash availability, and reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance

4

and presentment information. To lessen the disruption caused by the Chapter 11 Cases and maximize the value of the Debtors' estate, the Debtors believe it is essential that it be allowed to maintain its well-developed Cash Management System. Given the general demands of the Debtors' reorganization process, it would be unduly burdensome to require the Debtors to establish an entirely new system for the management of the Debtors' cash assets. If the Debtors are not permitted to continue to utilize the Cash Management System, its operations would be severely disrupted. Accordingly, the Court should authorize the Debtors' continued use of the Cash Management System described herein.

14. The Cash Management System is an integrated system that provides well-established mechanisms for the collection, distribution, movement and management of funds used in the Debtors' business operations. The flow of cash begins with cash generated as a result of the Debtors' coal mining operations in Eastern Kentucky. The Debtors' cash management reporting and account functions are systematic and include the necessary accounting controls to enable the Debtors to trace funds. The Debtors maintains necessary records for their Cash Management System that identify the current balance of their Bank Accounts. The Debtors are also able to determine the amount of funds deposited into or withdrawn from the Bank Accounts by the Debtors and will track the expenses that are satisfied.

15. Bankruptcy courts routinely grant chapter 11 Debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter []." In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This Court has frequently granted Chapter11 debtors the authority to continue to use their existing bank accounts and cash management systems. See, e.g., In re Dawahare's of Lexington, LLC, Case No. 08-51381 (Bankr. E.D. Ky. June 5, 2008); In re Horizon Natural Resources

Company, Case No. 02-14261 (Bankr. E.D. Ky. November 15, 2002); In re Lodestar Holdings, Inc., Case No. 01-50969 (Bankr. E.D. Ky., April 27, 2001); In re Polycel Structural Foam, Inc., Case No. 00-52512 (Bankr. E.D. Ky., December 14, 2000); In re Quaker Coal Company, Case No. 00-51374 (Bankr. E.D. Ky., June 16, 2000); In re Russell Cave, Inc., Case No. 01-50969 (Bankr. E.D. Ky., January 26, 1999); In re JBB Liquidating 2011 Inc., (f/k/a JB Booksellers, Inc. et al., Case No. 10-53593 (Bankr. E.D. Ky., November 15, 2010).

16.     The Debtors must be able to continue using the Cash Management System as described above so that it can coordinate management of cash and transfers of funds to operate their business efficiently and effectively. Any disruption in the Cash Management System could delay the collection and disbursement of funds and threaten the orderly operation of the Debtors' businesses. Under the circumstances set forth herein, maintaining the Debtors' Cash Management System is both essential and in the best interest of the Debtors' estates and creditors.

17.     In conjunction with the authority to continue to use their Cash Management System, the Debtors requests that no Bank participating in the Cash Management System that honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors, (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored post-petition. The Debtors believe that such flexibility accorded the Banks is necessary to induce the Banks to continue providing cash management services without additional credit exposure.

**B.     Request for Authority to Maintain Their Existing Bank Accounts**

18.     The United States Trustee, who administers bankruptcy cases filed in the Eastern District of Kentucky, has issued certain UST Guidelines pursuant to 28 U.S.C. § 586.  The UST Guidelines require that Chapter11 debtors, among other things, close all existing bank accounts upon filing of their petitions and open new "debtors-in-possession" accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee.

19.     The Debtors seek a waiver of the UST requirement that its Bank Accounts be closed and that new postpetition bank accounts be opened.  If enforced in this case, the UST requirements would cause disruption in the Debtors' businesses.  As described above, the Debtors' Bank Accounts comprise a cash management system that the Debtors must maintain in order to ensure efficient collections and disbursements in the ordinary course of its business.  Therefore, to avoid delays in paying debts incurred post-petition, the Debtors should be permitted to continue to maintain the Bank Accounts and, if necessary, to open new accounts and close existing accounts in the normal course of business operations.

20.     Accordingly, the Debtors request that this Court waive the strict enforcement of the requirement that the Debtors open new bank accounts.  The Debtors further request that the Bank Accounts be deemed debtors-in-possession accounts and the Debtors be authorized to maintain and continue using these accounts in the same manner and with the same account numbers, styles and document form as those employed during the prepetition period.

21.     The Debtors represents that, if the relief requested herein is granted, they will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by them prior to the Petition Date, other than those authorized by this Court.  To prevent the possible inadvertent payment of prepetition claims, except those otherwise authorized by this

7

Court, the Debtors will work closely with the Banks to ensure appropriate procedures are in place to prevent checks issued prepetition from being honored absent this Court's approval.

22.     Although the Debtors seeks authorization to utilize and retain its existing checks and bank accounts, the Debtors will maintain its books and records so as to provide a clear line of demarcation between prepetition and postpetition transactions and operations.  The Debtors further represents that if the relief requested in this motion is granted, it will not pay, and each of the Banks will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

23.     The UST Guidelines also state that disbursements other than by numbered check are prohibited.  The Debtors seek relief from this requirement.  The Debtors sometimes disburse funds by, among other avenues, debits, wire transfers and by initiating automated clearing house transfers.  To the extent any such transfers are done in the ordinary course of the Debtors' businesses, the Debtors seek permission to continue such transfers.  The Debtors will ensure that procedures are in place to track each transfer of funds, including, but not limited to, debits, wire transfers and automated clearing house transfers.

**C.     Request for Authority to Use Existing Business Forms and Checks**

24.     In the ordinary course of its businesses, the Debtors use many pre-printed correspondence and business forms, including, but not limited to, checks.  The Debtors request that this Court permit the Debtors to continue using its existing pre-printed correspondence and business forms without alteration or modification.  Changing correspondence and business forms would be unnecessary and burdensome to the estates, as well as expensive and disruptive to the Debtors' business operations.  Parties doing business with the Debtors undoubtedly will be aware

of the Debtors' status as debtors in possession and brand new correspondence and business forms would be unneeded.

25. This Court has recognized that requiring, among other things, the replacement of existing business forms is unnecessarily burdensome and does not always serve the purposes of Chapter11. In fact, courts have often waived such requirements and replaced them with alternative procedures. See, e.g., In re Dawahare's of Lexington, LLC, Case No. 08-51381 (Bankr. E.D. Ky. June 5, 2008); In re Horizon Natural Resources Company, Case No. 02-14261 (Bankr. E.D. Ky. November 15, 2002); In re Lodestar Holdings, Inc., Case No. 01-50969 (Bankr. E.D. Ky., April 27, 2001); In re Polycel Structural Foam, Inc., Case No. 00-52512 (Bankr. E.D. Ky., December 14, 2000); In re Quaker Coal Company, Case No. 00-51374 (Bankr. E.D. Ky., June 16, 2000); In re Russell Cave, Inc., Case No. 01-50969 (Bankr. E.D. Ky., January 26, 1999); In re JBB Liquidating 2011 Inc., (f/k/a JB Booksellers, Inc. et al.), Case No. 10-53593 (Bankr. E.D., Ky., November 15, 2010).

26. Accordingly, the Debtors also requests authority to (i) continue using its correspondence and business forms to the extent that the Debtors shall manually alter and/or modify said forms with the Debtors-in-possession designation and (ii) delay the purchase and/or obtaining of new correspondence and business forms with the Debtors-in-possession designation until the existing correspondence and business forms have been completely used.

### D. Request for a Waiver of the Deposit Requirements of 11 U.S.C. § 345(b)

27. The Debtors are requesting that this Court waive the requirements of Section 345(b) and permit them to maintain their deposits in their accounts in accordance with the existing deposit practices. Courts may grant a waiver of the deposit guidelines contained in Section 345. In re Service Merchandise Co., 240 B.R. 894 (Bankr. M.D. Tenn. 1999) (waiving

9

requirements of Section 345(b) because benefit of waiver to debtor outweighed any risk of harm to the estate).

28. Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department agent or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety. 11 U.S.C. § 345(b).

29. A court may, however, relieve a Debtor-in-possession of the restrictions imposed by Section 345(b) for "cause." 11 U.S.C. § 345(b). Given the design and use of the Debtors' Cash Management System and the security of the Cash Management System, the Debtors submit that cause exists to grant a waiver of the requirements of section 345(b) of the Bankruptcy Code. Requiring the Debtors to change deposits and other procedures could result in harm to the Debtors, its estate and creditors because it would disrupt the Debtors' existing Cash Management System.

E. **The requirements of Bankruptcy Rule 6003 are satisfied**

30. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . ." If the Debtors are not permitted to continue to use their Cash Management System in its current form, it would cause immediate and irreparable

harm by causing operational chaos, disabling the Debtors from paying for goods and services received postpetition or otherwise approved by this Court and disrupting the collection of receivables. Accordingly, the interim relief requested herein is consistent with Bankruptcy Rule 6003 and the Court should authorize the Debtors' continued use of the Cash Management System.

### F.   The requirements of Bankruptcy Rule 6004 should be waived

31. In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the immediate continued use of the Bank Accounts, Cash Management System and Business Forms is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to implement their Chapter 11 strategy. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### NOTICE

32. No trustee or examiner has been appointed in these cases. Notice of this Motion has been given to (i) the Office of the United States Trustee for the Eastern District of Kentucky; (ii) the Debtors' 20 largest unsecured creditors on a consolidated basis; (iii) GB Credit Partners, LLC; (iv) counsel for GB Credit Partners, LLC; (v) Bayside JW Resources, LLC; (vi) counsel for Bayside JW Resources, LLC; (vii) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, i.e., GB Credit Partners, LLC, Bayside JW Resources, LLC, Bill Miller Equipment Sales, Inc., Komatsu Financial Limited Partnership; (viii) all parties to equipment leases with the Debtors to the extent reasonably known to the

Debtors; (ix) all parties asserting a surety bond interest in the assets of the Debtors to the extent reasonably known to the Debtors, i.e., Smith Manus Surety Bonds, Commonwealth of Kentucky, Energy and Environment Cabinet, Department of Natural Resources, Commonwealth of Kentucky, Energy and Environment Cabinet, Division of Mine Reclamation and Enforcement, Kentucky Utilities, Cumberland Valley Electric, Inc., United States of America, Department of the Interior, Bureau of Land Management, Bond Safeguard Insurance Co., Lexon Surety Group; (x) all parties asserting a taxing interest in the assets of the Debtors to the extent reasonably known to the Debtors, i.e. Kentucky Department of Revenue, Kentucky Workers Compensation Fund, Kentucky Department of Natural Resources, Tennessee Department of Revenue, US Department of Treasury, and US Department of Interior-Office of Surface Mining; (xi) counsel to any party in pending litigation with the Debtors; and (xii) those entities specifically affected by a specific motion.  **Please take notice that the Debtor has filed a Motion for an Expedited Hearing to consider First Day Motions, including the foregoing.**

### NO PRIOR REQUEST

33.    No prior motion for the relief requested herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an interim, and subsequently final, order, substantially in the forms filed herewith as **Exhibit B** and **Exhibit C**, (i) authorizing and approving the Debtors' continued use of their existing Cash Management System, (ii) authorizing the Debtors to continue using the prepetition Bank Accounts and business forms, (iii) waiving certain requirements set forth in the UST Guidelines; (iv) waiving the requirements of 11 U.S.C. § 345(b) with respect to the Debtors' deposit practices; and (v) granting such other and further relief as this Court deems appropriate.

Dated:   June 30, 2015                          Respectfully submitted,

                                             **FROST BROWN TODD LLC**

By:    */s/ Paige L. Ellerman*
       Ronald E. Gold, Esq.
       (Ohio Bar No. 0061351)
       Douglas L. Lutz, Esq.
       (Ohio Bar No. 0064761)
       Paige L. Ellerman, Esq.
       3300 Great American Tower
       301 East Fourth Street
       Cincinnati, Ohio  45202
       Tel:  (513) 651-6800
       Fax:  (513) 651-6981
       E-mail:  rgold@fbtlaw.com
       E-mail:  dlutz@fbtlaw.com
       E-mail:  pellerman@fbtlaw.com

       -and-

       Adam R. Kegley, Esq.
       250 West Main Street, Suite 2800
       Lexington, KY 40507
       Tel:  (859) 231-0000
       E-mail:  akegley@fbtlaw.com

       **PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**