# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| | ) | **Case No. 15--60831** |
| **JW RESOURCES, INC.,** *et al.,*[1] | ) | **(Jointly Administered)** |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MOTION OF DEBTORS FOR ORDER: (A) APPROVING BID PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS (EXCLUDING MOBILE EQUIPMENT) AND TO ASSUME AND ASSIGN CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE AND APPROVE THE FORM AND MANNER OF NOTICE RELATED THERETO; AND (C) GRANTING RELATED RELIEF**

The Debtors and debtors-in-possession in the above-captioned chapter 11 cases, by their attorneys, Frost Brown Todd LLC, respectfully move this Court (the "**Motion**") for entry of an order, pursuant to 11 U.S.C. §§ 105(a), 363(b), (f) and (m), 365, 1107 and 1108 (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure: (A) establishing bid procedures (the "**Bidding Procedures**") to sell all or substantially all of the Debtors' assets, excluding mobile equipment,[2] and to assume and assign certain of the Debtors' executory contracts and unexpired leases (the "**Sale**"); (B) scheduling an auction (the "**Auction**") and hearing to consider the Sale (the "**Sale Hearing**") and approving the form and manner of notice for the Sale (the "**Sale Notice**"); and, (C) granting other related relief. In support of its Motion, the Debtors respectfully state:

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses):  JW Resources, Inc. (6400), Straight Creek Coal Mining, Inc. (9073), SCRB Properties, Inc. (1609), and SCRB Processing, Inc. (6470).

*NY 245302931v2*

## **INTRODUCTION AND BACKGROUND**

1.       The Debtors commenced chapter 11 cases under which they are seeking joint administration (the "**Chapter 11 Cases**"), by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 28 and 30, 2015 (the "**Petition Date**").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their affairs as debtors-in-possession.

2.       The Debtors are U.S. producers of thermal coal with mineral reserves, mining operations and coal properties located in the Central Appalachian regions of Kentucky.  By and/or through these operations, the Debtors supply different qualities of coal to its customers.

3.       JW Resources, Inc. ("**JW Resources**") is the parent and sole shareholder of SCRB Properties, Inc., Straight Creek Coal Mining, Inc. and SCRB Processing, Inc.

4.       JW Resources acquired its assets and business operations from Xinergy Corp. in February, 2013 (the "**Straight Creek Acquisition**").  The Debtors' business operations comprise what is known as the "Straight Creek" operations located in Bell, Leslie and Harlan Counties, Kentucky, and the "Red Bird" operations located in Bell, Leslie, Knox, and Clay Counties, Kentucky.

5.       Following the Straight Creek Acquisition, there has been a decrease in the demand for coal and a dramatic increase in the cost of mining and processing coal, due in part to burdensome governmental regulations, with the spot price of coal per ton decreasing by 26% through April 2015.  The Debtors were also unable to obtain needed additional funding from their existing secured lenders, equity holders or other third-parties in order to sustain normal

---

[2] The Debtors' mobile equipment, which is excluded from this Motion, will be subject to a separate proposed sale process for which the Debtors anticipate seeking approval from this Court as soon as possible.

operations prior to the filing of these Chapter 11 Cases.

6.     In order to maximize the value of the Debtors' assets for the benefit of all stakeholders, the Debtors believed that a sale of the assets would maximize the value for all constituents.   The Debtors have retained Energy Ventures Analysis, Inc. ("**EVA**") as their investment bankers to pursue a sale of substantially all of the assets of the Debtors as part of this Chapter 11 Case.   Accordingly, the Debtors have filed a motion seeking to sell substantially all of their assets (other than the mobile equipment) through an open auction process under section 363 of the Bankruptcy Code.   The Debtor anticipate selling the mobile equipment through a separate process.

7.     Additional information regarding the Debtors' businesses, capital structure, the circumstances leading to the Chapter 11 Cases are contained in the *Debtors' Declaration in Support of First Day Motions* (the "**First Day Declaration**").

(1)     As set forth in the First Day Declaration, substantially all of the Debtors' assets are encumbered to support the obligations owing under (A) that certain Credit Agreement dated as of January 30, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and together with all agreements, documents, notes and instruments in respect thereof, the "**Prepetition Credit Documents**") between and among the Debtors, GB Credit Partners, LLC, as agent (in such capacity, the "**Prepetition Agent**") and the lenders that are parties thereto from time to time (the "**Prepetition Lenders**" and together with the Prepetition Agent, the "**Prepetition Secured Parties**") and (B) that certain Amended and Restated Credit Agreement dated as of January 30, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Sponsor Credit Agreement**," and together with all agreements, documents, notes and instruments in

-3-

respect thereof, the "**Prepetition Sponsor Credit Documents**") between and among the Debtors, Bayside JW Resources, LLC, as administrative agent (in such capacity, the "**Prepetition Sponsor Agreement Agent**") and the lenders that are parties thereto from time to time (the "**Prepetition Sponsor Agreement Lenders**" and together with the Prepetition Sponsor Agreement Agent, the "**Prepetition Sponsor Agreement Secured Parties**").  The obligations under the Prepetition Sponsor Credit Documents are subordinated to the obligations under the Prepetition Credit Documents to the extent provided in that certain First Lien/Second Lien Subordination and Intercreditor Agreement by and among GB Credit Partners, LLC as First Lien Agent, Bayside JW Resources, LLC, as Second Lien Agent, JW Resources, Inc., SCRB Properties, Inc. and the Guarantor Subsidiaries party thereto dated as of January 30, 2014 (the "**Intercreditor Agreement**").

8.    In connection with the commencement of these Chapter 11 Cases, the Debtors obtained interim approval of the use of cash collateral and to debtor-in-possession financing pursuant to the *Interim Order (I) Authorizing Post-Petition Secured Financing Pursuant To Sections 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1), 364(E) And 503(B) Of The Bankruptcy Code; (II) Authorizing The Debtors To Use Cash Collateral Pursuant To Section 363 Of The Bankruptcy Code; (III) Providing Adequate Protection To The Prepetition Secured Parties Pursuant To Sections 361, 362, And 363 Of The Bankruptcy Code; (IV) Modifying The Automatic Stay Pursuant To Section 362(D) Of The Bankruptcy Code; (V) Scheduling A Final Hearing; And (IV) Providing Related Relief* [Docket No. 88] (the "**Interim DIP Order**") pursuant to the terms and conditions set forth in those certain DIP Credit Documents defined therein (the "**DIP Credit Facility**").  Gordon Brothers Finance Company acts as administrative agent (in such capacity, the "**DIP Agent**") under the DIP Credit Facility.

9.      The DIP Credit Facility requires that the Debtors meet certain milestones in connection with a Sale including, among other requirements: (i) entry of an order of this Court approving the Bidding Procedures and setting a Sale Hearing no later than **July 28, 2015** (the "**Bid Procedures Hearing**"), which Bidding Procedures shall be in form and substance acceptable to the DIP Agent; (ii) receive qualified bids including customary bid package requirements and marked up forms of asset purchase agreement for the purchase of all or substantially all of the Debtors' assets from qualified bidders ("**Qualified Bidders**") no later than **August 14, 2015**; (iii) select the baseline bid for the Auction, in consultation with the DIP Agent and the Prepetition Agent, no later than **August 17, 2015**;  (iv) conduct the Auction no later than **August 19, 2015**; (v) obtain an order approving the Sale no later than **August 21, 2015**;  and (vi) consummate the Sale on or before **August 28, 2015**.

## JURISDICTION

10.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11.      The statutory predicates for the relief sought herein are sections §§ 105(a), 363(b), (f) and (m), 365, 503, 507(b), 364(c)(1) and (d), 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

12.      On July 8, 2015, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**") in these Chapter 11 Cases.

## REQUESTED RELIEF

13.    By this Motion, the Debtors seek entry of an order, substantially the form of **Exhibit A** attached hereto and made a part hereof: (a) approving the Bidding Procedures for the Sale; (b) approving certain bid protections in connection therewith; (c) scheduling a date for the Auction; (d) scheduling the Sale Hearing; (e) approving the form and manner of Sale Notice attached hereto as **Exhibit B**, and (f) for such other relief as the Court deems just.

## TERMS OF THE PROPOSED SALE

14.    Shortly after the filing of this Motion, the Debtors intend to file a motion (the "**Sale Motion**") to approve the sale of all or substantially all of their assets, excluding the Debtors' mobile equipment, and to assume and assign their executory contracts and unexpired leases except those related to the mobile equipment (collectively, the "**Purchased Assets**") to the successful bidder in accordance with the Bidding Procedures.[3]

15.    The Debtors are offering for the Purchased Assets for sale in whole or in part.  All of the Debtors' right, title and interest in and to the Purchased Assets shall be sold free and clear of any liens, claims, interests and encumbrances (collectively, the "**Liens, Claims and Encumbrances**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Purchased Assets with the same validity and priority as such Liens, Claims and Encumbrances applied against the Purchased Assets.  The Debtors will evaluate all bids, in consultation with the DIP Agent and the Prepetition Agent and in consultation with the Committee, to determine whether

-6-

such bid or combination of bids maximizes the value of the Debtors' estates as a whole.

## BIDDING PROCEDURES

16.     The Debtors have determined that the following structure for the Bidding Procedures is the one most likely to maximize the realizable value of the Purchased Assets for the benefit of the Debtors' estates, creditors and other interested parties, consistent with the need to expedite the Sale process.  The Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, shall in accordance with the provisions of these Bidding Procedures and the Bid Procedures Order (i) determine whether any person is a Potential Bidder (as defined below) or a Qualified Bidder (as defined below) in accordance with the criteria set forth herein, (ii) coordinate the efforts of Potential or Qualified Bidders in conducting their due diligence investigations as set forth herein, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offers made to purchase the Purchased Assets (collectively, the "**Bidding Process**").

## PARTICIPATION REQUIREMENTS

17.     In order to be a Qualified Bidder, any party that may be interested in all or a subset of the Purchased Assets (a "**Potential Bidder**") must deliver the following to the Debtors, with a copy to the DIP Agent and Prepetition Agent, at the addresses specified below (unless a particular document has been previously delivered to the Debtors and the DIP Agent) not later than five (5) days before the Bid Deadline (defined below) (the "**Participation Requirements**"):

i.      An executed confidentiality agreement ("**Confidentiality Agreement**") in form and substance acceptable to the Debtors;

---

[3]As of the filing of this Motion, each of the DIP Agent and the Prepetition Agent have indicated that they support the filing of the Motion but that they have not consented to the Sale of the assets and reserve all rights in connection therewith.

ii.    A statement of Potential Bidder identifying the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction;

iii.    Written disclosure of any connections or agreements with the Debtors, any other known Potential Bidder or Qualified Bidder, and/or any officer, director, manager or direct or indirect equity security holder of the Debtors; and

iv.    Information sufficient to allow the Debtors in consultation with the DIP Agent, the Prepetition Agent and the Committee to determine that the Potential Bidder is reasonably likely to close on the Sale in a timely manner if selected as a Successful Bidder (as defined below).

18.    A "**<u>Qualified Bidder</u>**" is a Potential Bidder who meets the Participation Requirements and submits a Qualified Bid (defined below) by the Bid Deadline.

<u>**DUE DILIGENCE**</u>

19.    Only Potential Bidders that meet the Participation Requirements are eligible to receive due diligence access and/or certain non-public information.  The Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, may choose to restrict access to certain information that is competitively sensitive or privileged as to any Potential Bidder.  If the Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, determine that a Potential Bidder no longer meets the Participation Requirements, then such Potential Bidder's access to due diligence or other non-public information shall terminate. Except as set forth in any definitive purchase agreement, the Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders or Qualified Bidders in connection with the sale of the Purchased Assets.

20.     The Debtors will afford any Potential Bidder that meets the Participation Requirements the time and opportunity to conduct reasonable due diligence; provided, however, that the Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline.  The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders or Qualified Bidders.

## BID DEADLINE

21.     A Potential Bidder that meets the Participation Requirements and desires to make a bid shall deliver by mail and/or electronic mail as indicated written copies of its bid and the Required Bid Materials (defined below) to (i) counsel to the Debtors, Frost Brown Todd LLC, Attn:  Paige L. Ellerman, Esq., 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202 (pellerman@fbtlaw.com); (ii) the sales advisor to the Debtors, Energy Ventures Analysis, Inc., Attn:  Emily Medine (emedine@evainc.com) (iii) counsel to the DIP Agent and the Prepetition Agent, Greenberg Traurig, LLP, Attn: Nancy Mitchell (mitchelln@gtlaw.com) and Matthew Hinker (hinkerm@gtlaw.com), MetLife Building, 200 Park Avenue, New York, NY 10166, as well as Dinsmore & Shohl LLP, Attn: Patrick D. Burns, 255 East Fifth Street, Suite 1900, Cincinnati, OH 45202 (patrick.burns@dinsmore.com) (iv) counsel to the Committee, Barber Law PLLC, Attn:  Kent Barber (kbarber@barberlawky.com), and (v) the Office of the United States Trustee for the Eastern District of Kentucky, Attn:  Rachelle Dodson, Esq., 100 E. Vine St., #500, Lexington, Kentucky 40507, in each case **not later than 4:00 p.m. (prevailing Eastern Time) on August 14, 2015** (the "**Bid Deadline**").

## BID REQUIREMENTS[4]

22.    A Qualified Bid, shall be in writing, include the information and documents set forth below (the "**Required Bid Materials**"), and meet the following conditions:

i.    State that that the Potential Bidder is prepared to enter into a legally binding purchase agreement for the acquisition of the Purchased Assets, or an identified subset of the Purchased Assets (each, an "**Asset Purchase Agreement**").

ii.    Include an executed binding Asset Purchase Agreement together with a marked copy of such Agreement against the form provided by the Debtors to Potential Bidders (the "**APA**") or in the case of a non-going concern bid, other legally binding documents setting forth the terms on which the Potential Bidder proposes to acquire the Purchased Assets, or if there is a Stalking Horse Bid (as hereafter defined) with respect to the Purchased Assets, the Asset Purchase Agreement shall reflect variations from the Stalking Horse Purchase Agreement (as hereafter defined).

iii.    Provide for a purchase of all or substantially all of the Purchased Assets, or an identified subset of the Purchased Assets, and,

a.    where there is no Stalking Horse Bid, contain the cash purchase price proposed by the bidder (the "**Purchase Price**"), provided, however, that the Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, reserve the right to establish a minimum bid amount;

---

[4] The Debtors do not presently have a "**Stalking Horse Bid**," as defined herein, for the Purchased Assets. They reserve their rights (with the consent of the DIP Agent and the Prepetition Agent) to modify the Bidding Procedures and the proposed Bidding Procedures Order to include a "Stalking Horse Bid" in the event that one is identified as set forth in this Motion.

or,

b.      where there is a Stalking Horse Bid, (i) the purchase price contained in the Stalking Horse Bid, plus (ii) cash in the amount of any Break-Up Fee (as defined below) plus (iii) an additional cash overbid of at least $100,000 (subparts (i) through (iii) collectively, the "**Minimum Overbid**"); provided, however, that the Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, may consider a competing bid for less than substantially all of the Purchased Assets that would otherwise qualify as a Qualified Bid as long as such competing bid, by itself or in combination with another competing bid for different assets that would otherwise qualify as a Qualified Bid, contains a proposed purchase price at least in the amount of the Minimum Overbid.

iv.      Include a letter stating and agreeing that the Asset Purchase Agreement (or in the case of a non-going concern bid, such other legally binding documents) is irrevocable until (i) the closing of the transaction, if such Qualified Bidder is designated as a Successful Bidder or, (i) if such Qualified Bidder is designated as a Backup Bidder (as defined below), until the earlier of (x) two business days after the closing of the transaction(s) by which all of the Purchased Assets that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (y) sixty (60) days after the date of the Auction.

v.      To the Debtors' satisfaction, in consultation with the DIP Agent, the Prepetition Agent and the Committee, (i) fully disclose the identity of each entity that will be

bidding for the Purchased Assets, or the identified subset of the Purchased Assets, or otherwise

participating in connection with such bid, (ii) the terms of any such participation, and if an entity

has been formed for the purpose of acquiring some, or all, of the Purchased Assets, the parties

that will bear liability for any breach by such entity, and (iii) the ability of such parties to obtain

government, licensing or regulatory approval in connection with the consummation of any

proposed transaction.

vi.     Provide evidence of authorization and approval from the Qualified

Bidder's board of directors (or comparable governing body) with respect to the submission,

execution, delivery and closing of the proposed transaction to the Debtors' satisfaction in

consultation with the DIP Agent, the Prepetition Agent and the Committee.

vii.    Be accompanied by a cash deposit in the amount of $25,000.00 (the

"**Earnest Money Deposit**"), in the form of a wire transfer, certified check or such other form

acceptable to the Debtors (the "**Bid Deposit**"), which shall be placed in an escrow account or

other segregated account acceptable to the Debtors (the "**Escrow Account**").

viii.   Include a representation of the Potential Bidder and written evidence

acceptable to the Debtors in consultation with the DIP Agent, the Prepetition Agent and the

Committee, that the Potential Bidder has the financial wherewithal to consummate the proposed

transaction, provided that if a bid is based partly or completely on financing, (provided such

financing shall not be a condition to closing) written evidence of the commitment for financing

and the appropriate contact information for such financing source must be provided.   The

financial information shall demonstrate to the Debtors' satisfaction, in consultation with the DIP

Agent, the Prepetition Agent and the Committee, that such Potential Bidder has the wherewithal to provide the adequate assurance of future performance required under section 365 of the Bankruptcy Code.

ix.     The bid shall not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, termination or similar type of fee or payment, and shall include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Purchased Assets, the financial performance of the Purchased Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures.

x.     The bid shall not contain any due diligence, financing, or regulatory contingencies of any kind (other than a condition that any applicable waiting period under any regulatory agency (if applicable) shall have expired or been terminated), though the bid may be subject to the satisfaction of specific conditions in all material respects at Closing.

xi.     Set forth the anticipated timeframe for consummating the proposed transactions **on or before August 28, 2015** (the "**Closing Deadline**").

xii.     The bid shall state that the offering party consents to the core jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes

relating to the Auction and the construction and enforcement of the Potential Bidder's contemplated transaction documents.

xiii.    The bid shall provide that the Potential Bidder shall be bound as a "Backup Bidder" as provided below.

xiv.    Be accompanied by a list of any executory contracts or unexpired leases that are to be assumed and/or assigned under such bid.

xv.    Agree to provide such other information as may be reasonably requested in writing by the Debtors or the DIP Agent or Prepetition Agent prior to the Auction.

xvi.    Include a written acknowledgment that such Potential Bidder agrees to the terms of the Bidding Procedures.

21.    A bid received from a Potential Bidder that meets the Participation Requirements, includes all of the Required Bid Materials and otherwise meets the conditions set forth above to the satisfaction of the Debtors in their discretion, after consultation with the DIP Agent, the Prepetition Agent and the Committee, and is received by the Bid Deadline is a "**Qualified Bid**." A Potential Bidder submitting a Qualified Bid shall be a "**Qualified Bidder**".  The Debtors reserve the right, in consultation with the DIP Agent, the Prepetition Agent and the Committee, to determine the value of any Qualified Bid, and which Qualified Bid(s) constitutes the highest or best offer(s) (subject to Bankruptcy Court approval).

## **BACKUP BIDDER**

22.    Upon a determination by the Debtors, in consultation with the DIP Agent, the

Prepetition Agent and the Committee, that a Successful Bidder either fails to consummate the purchase of all or a subset of the Purchased Assets pursuant to its Agreement on or before the Closing Deadline, breaches its Asset Purchase Agreement, or otherwise fails to perform, the Debtors may, after consultation with the DIP Agent, the Prepetition Agent and the Committee, without further order of the Court, deem such Successful Bidder a "**Defaulting Purchaser**".  In such event, the Debtors will be authorized, but not required, to consummate a sale transaction with the party (the "**Backup Bidder**") submitting the next highest and best Qualified Bid (the "**Backup Bid**") for the Purchased Assets or the subset of the Purchased Assets, on the terms and conditions set forth in the Backup Bid without further order of the Court (the "**Backup Purchase**").  On an as-needed basis, the Debtors will determine an alternative closing deadline for the consummation of the Backup Purchase.

23.     The Debtors shall be entitled to (i) retain the Deposit of the Defaulting Purchaser as part of its damages resulting from the breach or failure to perform by the Defaulting Purchaser and (ii) seek all available damages from such Defaulting Purchaser occurring as a result of such Defaulting Purchaser's failure to perform, up to the same damage amounts provided under the Agreement (if any).

## SOLE QUALIFYING BID

24.     If only one Qualified Bid for the Purchased Assets or any subset thereof submitted by the Bid Deadline, the Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, may determine not to hold an Auction and instead shall request at the Sale Hearing that the Bankruptcy Court approve such Qualified Bid or Qualified Bids.

## ABILITY TO SELECT A STALKING HORSE BIDDER

25.     The Debtors, with the consent of the DIP Agent and Prepetition Agent, may

execute an asset purchase agreement (a "**Stalking Horse Purchase Agreement**") with any third

party as a "stalking-horse" bidder (the "**Stalking Horse Bidder**") in connection with the Sale of

the Purchased Assets (a "**Stalking Horse Bid**").    In such event, the Stalking Horse Purchase

Agreement shall become the form of APA used by all Qualified Bidders.

26.      The Debtors will provide all Qualified Bidders with a copy of any Stalking Horse

Purchase Agreement within two (2) business days following the execution of a Stalking Horse

Purchase Agreement (but in no event later than five (5) business days prior to the Auction).

27.      The Stalking Horse Bidder and any additional bids made by the Stalking Horse

Bidder shall be deemed a Qualified Bid and the Stalking Horse Bidder shall be deemed a

Qualified Bidder.

## AUCTION

28.      If two or more Qualified Bids have been received by the Debtors by the Bid

Deadline for the Purchased Assets or any subset thereof, the Debtors, after consultation with the

DIP Agent, the Prepetition Agent and the Committee, may conduct an Auction for the Purchased

Assets.  The Debtors shall provide the Qualified Bidders that submitted Qualified Bids with a

copy of the Asset Purchase Agreement relating to the other Qualified Bids at least twenty-four

(24) hours prior to the Auction.  The Auction shall be conducted at the offices of Frost Brown

Todd LLC, Lexington financial Center, 250 W. Main Street, Suite 2800, Lexington, KY 40507-

1749 (the "**Auction Site**") **at 10:00 a.m. (prevailing Eastern Time) on August 19, 2015** (the

"**Auction Date**"), or upon the consent of the DIP Agent and Prepetition Agent, at such other

place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified

Bids and expressed their intent to participate in the Auction as set forth above.

-16-

The Auction shall be governed by the following procedures:

i.       All Qualified Bids made at the Auction shall be made and received on an open basis, and all material terms of each subsequent bid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the opening bid, all subsequent bids, and the Successful Bid.

ii.       The Debtors, may, in consultation with the DIP Agent, the Prepetition Agent and Committee, conduct the Auction, in the manner that it determines, in its business judgment and may adopt rules for the Auction at the Auction that, in the Debtors' business judgment will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order.  All such rules will provide that: (i) the Auction procedures must be fair and open, and not intended to cause any participating Qualified Bidder to be disadvantaged in any material way as compared to any other participating Qualified Bidder, and (ii) all participating Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder (i.e., the principals submitting each bid) shall be fully disclosed to all other participating Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction.  Each bid by a Qualified Bidder at the Auction, if not inconsistent with the provisions of these Bid Procedures, shall be deemed to constitute a Qualified Bid.

iii.       The Debtors will arrange for the actual bidding at the Auction to be transcribed.

iv.       Each Qualified Bidder participating in the Auction will be expected to confirm at the Auction that it has not engaged in any collusion regarding these Bidding Procedures with any other Qualified Bidder, the Auction or any proposed transaction relating to

the Purchased Assets.

v.     At the Auction, bid increments shall be first in the amount of the

Minimum Overbid Amount and shall thereafter be increased by at least the amount of $100,000

(the "**Minimum Bid Increment**"); provided that if the Purchased Assets are sold in lots the

Debtors, in consultation with the DIP Agent, the Prepetition Agent and Committee, may adjust

the Minimum Overbid or Minimum Bid Increment to take into account the size of the lot. For

purposes of comparing any bids by the Stalking Horse Bidder at the Auction that are higher than

the bid set forth in any Stalking Horse Purchase Agreement (a "**Higher Stalking Horse Bid**")

against any other bids that are made by a Qualified Bidder (other than the Stalking Horse Bidder)

pursuant to these Bidding Procedures, each Higher Stalking Horse Bid shall include the amount

of the Break-Up Fee.  In the event that a Higher Stalking Horse Bid is the Successful Bid at the

Auction, the cash purchase price amount finally payable by the Stalking Horse Bidder in respect

of the Successful Bid will be reduced by the Break-Up Fee.

vi.     All Qualified Bidders shall have the right to, at any time, request that the

Debtors announce, subject to any potential new bids, the then current highest or best bid and, to

the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all

questions such Qualified Bidder may have regarding the Debtors' announcement of the then

current highest or best bid.

vii.     Upon conclusion of the bidding, the Auction shall be closed.

viii.     Representatives of (1) the Debtor, (2) the DIP Agent, (3) the Prepetition

Agent, (4) the Committee, and (5) other Qualified Bidders, shall be entitled to be present at the

Auction.  Creditors of the Debtors may attend the Auction.  Creditors wishing to attend the

Auction should provide written notice of intent to attend to the Debtors no later than 12:00 p.m.

on the day preceding the Auction.

ix.    Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

x.    The Auction shall continue until the Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, determine, subject to Bankruptcy Court approval, that the Debtors have received (a) the highest or otherwise best Qualified Bid or Bids for the Purchased Assets (as determined by the Debtors in consultation with the DIP Agent and the Committee) from among the Qualified Bidders submitted at the Auction (the "**Successful Bid**", made by the "**Successful Bidder**"), and (b) the Backup Bid.

29.    The Debtors, in consultation with the DIP Agent, the Prepetition Agent and the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.  After closing of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.  Bids for Purchased Assets offered for Sale at the Auction made after the close of the Auction shall not be considered by the Debtors.  At the Sale Hearing, the Debtors shall present the Successful Bid(s) and Backup Bid(s) to the Bankruptcy Court for approval.

## ACCEPTANCE OF QUALIFIED BIDS

30.    The Debtors shall sell the Purchased Assets or any portion thereof to any

Successful Bidder (or the party who submitted the Backup Bid ("**Backup Bidder**") should such bidder become the Successful Bidder as described below) only upon the approval of such bidder's bid by the Bankruptcy Court after the Sale Hearing.  The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Qualified Bid.  The Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

## CREDIT BID RIGHTS

31.     Each of the DIP Agent, subject to the entry of the order approving the DIP Facility on a final basis, and the Prepetition Agent shall have the right to use the DIP Obligations, DIP Liens and DIP Superpriority Claims, Prepetition Liens, and Prepetition Obligations, to credit bid with respect to any bulk or piecemeal sale of all or any portion of the assets to the extent permitted by section 363(k) or other applicable law.

## SALE HEARING

32.     The Debtors are requesting that a Sale Hearing be scheduled **on or before August 21, 2015** before the Bankruptcy Court.  **Objections to the Sale must be filed on or before August 14, 2015 at 4:00 p.m. (prevailing Eastern Time)**.  Following the approval of the Sale of all or a subset of the Purchased Assets to any Successful Bidder(s) at the Sale Hearing, if the Successful Bidder(s) fail(s) to consummate an approved sale within the time period set forth in the applicable asset purchase agreement, the Debtors shall be authorized, but not required, to deem the Backup Bid(s), as identified at the Sale Hearing, the Successful Bid(s), and the Debtors shall be authorized to consummate the sale with the Backup Bidder(s) submitting such bid(s) without further order of the Bankruptcy Court.  The Backup Bid(s) shall remain open until sixty (60) days after conclusion of the Auction.

-20-

## **RETURN OF BID DEPOSITS**

33.     The Bid Deposits shall not be subject to the claims, liens, security interests, or encumbrances of Debtors' creditors, except in the case of a Defaulting Purchaser (as defined below).  The Bid Deposits of Qualified Bidders shall be disbursed from the Escrow Account only as follows: (i) if the Qualified Bidder becomes the Successful Bidder, its Bid Deposit will be released to the Debtors or applied as provided under any asset purchase agreement between the Debtors and such Successful Bidder, and (ii) if such Qualified Bidder is not the Successful Bidder at the Auction, then its Bid Deposit shall treated as set forth below.  Other than the Bid Deposits of the Successful Bidder and the Backup Bidder(s), Bid Deposits of all other Qualified Bidders shall be returned as soon as practicable after entry of the order approving the sale of the Purchased Assets.  In addition to any other remedies available to the Debtors, the Debtors may retain the Bid Deposit of any Qualified Bidder who breaches or fails to perform any of its obligations pursuant to these Bidding Procedures or its Qualified Bid (each, a "**Defaulting Purchaser**") and such Bid Deposits may be the subject of claims, liens security interests and/or encumbrances of the Debtors' creditors, including the DIP Agent.

## **"AS IS, WHERE IS" SALE FREE AND CLEAR OF LIENS AND CLAIMS**

34.     The sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, its agents or its estates.  To the extent provided in any Asset Purchase Agreement and by applicable law, and pursuant to the order entered by the Bankruptcy Court approving the Sale, all of the Debtors' right, title and interest in and to the Purchased Assets subject thereto shall be sold free and clear of Liens, Claims and Encumbrances in accordance with Bankruptcy Code § 363(f), with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Purchased

Assets.

## APPROVAL OF BIDDING PROCEDURES AND FORM
## AND MANNER OF NOTICE THEREOF

35.     A debtor in possession may sell property of the estate outside of the ordinary course of business, subject to the approval of the court after notice and a hearing. 11 U.S.C. §363(b)(1).[5]  In accordance with Rule 6004(f)(1) of the Federal Rules of Bankruptcy Procedure, sales of property outside of the ordinary course of business may occur by private sale or by public auction.

36.     Based upon the totality of the facts and circumstances, the Debtors reasonably believe that the Sale of the Purchased Assets pursuant to the Bidding Procedures will enable the Debtors to obtain the highest and best offer for the Purchased Assets and maximize the value for the Debtors' estates.   Based upon the totality of the facts and circumstances, the Debtors reasonably believe the Bidding Procedures provide the best opportunity for the Debtors to sell the Purchased Assets and it is in the best interests of the Debtors' estates to implement the Bidding Procedures.

37.     Prior to and during the pendency of these chapter 11 cases, the Debtors, with the assistance of the investment banking firm of Energy Ventures Analysis, Inc. ("**EVA**") have extensively marketed the Purchased Assets to all known parties that may have an interest in purchasing the Purchased Assets.[6]  Substantial information concerning the Purchased Assets has been or will be provided to each interested party, along with an opportunity to conduct additional

---

[5] Section 363(b)(1) of the Bankruptcy Code provides that the "[debtor in possession] after notice and a hearing may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).
[6] The Debtors' marketing efforts will be detailed in the Sale Motion.

reasonable due diligence.  The Debtors believe that the solicitation of bids through the Bidding

Procedures will maximize the chances of receiving bids for the Purchased in the short term and

that the Auction will enhance the opportunity to generate competitive bidding.

38.     The Debtors further seek approval of the Sale Notice, substantially in the form

attached hereto and incorporated herein as **Exhibit B**.   The Debtors propose to serve the Sale

Notice, **within five (5) business days of entry of the Bidding Procedures Order**, upon (i) the

Office of the United States Trustee for the Eastern District of Kentucky; (ii) counsel for the

Official Committee of Unsecured Creditors; (iii) the DIP Agent and its counsel; (iv) the

Prepetition Agent and its counsel; (v) Bayside JW Resources, LLC; (vi) counsel for Bayside JW

Resources, LLC; (vii) all parties asserting a security interest in the assets of the Debtors to the

extent reasonably known to the Debtors, (i.e., the DIP Agent, the Prepetition Agent, LLC,

Bayside JW Resources, LLC, Bill Miller Equipment Sales, Inc., Komatsu Financial Limited

Partnership); (viii) all parties to equipment leases with the Debtors to the extent reasonably

known to the Debtors; (ix) all parties asserting a surety bond interest in the assets of the Debtors

to the extent reasonably known to the Debtors, (i.e., Smith Manus Surety Bonds, Commonwealth

of Kentucky, Energy and Environment Cabinet, Department of Natural Resources,

Commonwealth of Kentucky, Energy and Environment Cabinet, Division of Mine Reclamation

and Enforcement, Kentucky Utilities, Cumberland Valley Electric, Inc., United States of

America, Department of the Interior, Bureau of Land Management, Bond Safeguard Insurance

Co., Lexon Surety Group); (x) all parties asserting a taxing interest in the assets of the Debtors to

the extent reasonably known to the Debtors, (i.e. Kentucky Department of Revenue, Kentucky

Workers Compensation Fund, Kentucky Department of Natural Resources, Tennessee

Department of Revenue, US Department of Treasury, and US Department of Interior-Office of

Surface Mining); (xi) counsel to any party in pending litigation with the Debtors, (xii) and any regulatory authorities identified as having interests in the Purchased Assets, and (xiii) any parties on a master service list approved by the Court and consistent with Federal Rule of Bankruptcy Procedure 2002.  Accordingly, for all the reasons set forth herein, the Debtors submit that this Court should approve the Bidding Procedures and the form and manner of notice of the Sale Notice.

## **APPROVAL OF CERTAIN BID PROTECTIONS**

39.    The Debtors propose to provide any Stalking Horse Bidder, as may be selected in accordance with this Motion, with the following bid protections (collectively, the "**Bid Protections**"):

a.    **Break-Up Fee:**  If the Sale to the Stalking Horse Bidder is not consummated because the Debtors accept and consummate an alternative bid in an amount equal to or greater than the Minimum Overbid, enter into and consummate an agreement or file a plan of reorganization in respect of an Alternative Proposal that generates proceeds equal to or greater than the Minimum Overbid with respect to the Purchase Assets, the Debtors will pay to the Stalking Horse Bidder a break-up fee as set forth in any Stalking Horse Purchase Agreement (the "**Break-Up Fee**").  Any Break-Up Fee shall require the consent of the DIP Agent and Prepetition Agent.    An "**Alternative Proposal**" means any offer or other proposal, including by the Debtors' equity holders or creditors other than the Stalking Horse Bidder, regarding (i) a merger, consolidation, stock sale, share exchange, plan of reorganization, plan of liquidation, recapitalization, business combination or other similar transaction involving the Debtors' businesses or (ii) any sale, transfer or other disposition of a material portion of the Debtors' businesses, in a single transaction or series of related transactions, in each case where the

Purchased Assets generate proceeds equal to or greater than of the Minimum Overbid.  The Break-up Fee will be payable out of the first proceeds of the Alternative Proposal, immediately when received, ahead of any liens or claims of secured creditors, provided that the Alternative Proposal generates proceeds equal to or greater than of the Minimum Overbid with respect to the Purchased Assets.

**b.** **<u>Overbid Protection</u>:** The Bidding Procedures require any competing bids to contain a Minimum Overbid.

40.     No person, other than a Stalking Horse Bidder (if any), shall be entitled to any expense reimbursement, break up fees, "topping," termination or similar fee or payment.

41.     Bidding protections are mechanisms employed by corporations to encourage potential buyers to make bids to purchase the corporation or the corporation's assets.  The protections corporations typically offer include a combination of various incentives such as break up fees and overbid protections.  <u>In re Integrated Resources, Inc.</u>, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), <u>aff'd</u> 147 B.R. 650 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2nd Cir. 1993).

42.     Outside of the bankruptcy context, target corporations often employ bid protections to attract bidders.  <u>See</u> <u>Integrated Resources</u>, 135 B.R. at 750; <u>In re Hupp Indus., Inc.</u>, 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992).  Similarly, numerous bankruptcy courts have approved motions by debtors requesting bid protections.  <u>See</u> <u>Integrated Resources</u>, 135 B.R. at 751 (citing several instances of bankruptcy court approval of bid protections).  A selling corporation's rationale for granting bid protections is to encourage an initial bid, often referred to as a "stalking horse" offer.

43.     If a debtor accepts a higher bid from a party other than the "stalking-horse"

bidder, a break-up fee customarily is paid to the "stalking-horse" bidder to compensate the "stalking-horse" bidder for costs, including lost opportunity costs, incurred as a result of its role as a "stalking-horse" bidder.  See In re Jillian's Entertainment Holdings, Inc., Case No. 04-33192 (Jointly Administered) (Bankr. W.D. Ky. July 13, 2004) approving bid protections that included a termination fee, a break-up fee and minimum overbids for "stalking-horse" bidders); In re LTV Steel Co., Inc., Case No. 00-43866 (Bankr. N.D. Ohio April 24, 2001) (approving bid protections that included a termination fee and a minimum overbid for a potential "stalking-horse" bidder); In re EWI, Inc., 208 B.R. 885, 888 (Bankr. N.D. Ohio 1997) (noting that break-up fees customarily are paid to an unsuccessful "stalking-horse" bidder); In re CSC Indus., Inc. and Copperweld Steel Co., Case Nos. 93-41898 and 93-41899 (Bankr. N.D. Ohio Nov. 2, 1994) (approving break-up fees for "stalking-horse" bidder); In re Hupp Indus., Inc., 140 B.R. at 195 (noting that an unsuccessful "stalking-horse" should be entitled to a reasonable break-up fee).

44.    The Debtors submit that any Break-Up Fee will be reasonable and customary for sales of this size and properly calculated to maximize the value of the Purchased Assets.  In Hupp Industries, the court set forth seven factors that it considered significant in determining whether certain bid protections, including a break-up fee, were appropriate: (a) whether the fee requested correlates with the maximization of value to the debtor's estate; (b) whether the underlying negotiated agreement is an arm's-length transaction between the debtor's estate and the negotiating acquirer; (c) whether the principal secured creditors and the official creditors' committee are supportive of the requested fee; (d) whether the break-up fee constitutes a fair and reasonable percentage of the proposed purchase price; (e) whether the dollar amount of the break-up fee is so substantial that it provides a "chilling effect" on other potential bidders; (f) the existence of available safeguards to the debtor's estate; and (g) if unsecured creditors oppose the

break-up fee, whether there exists a substantial adverse impact upon such creditors.   <u>Hupp</u> <u>Industries</u>, 140 B.R. at 194.

45.     The Bid Protections satisfy the factors articulated by the <u>Hupp Industries</u> court. Specifically, the proposed Bid Protections (a) are fair and reasonable in light of the circumstances and proposed transaction; (b) are designed to assist, rather than hamper, the Bidding Process; and (c) will benefit creditors by attracting potential purchasers to maximize the value of the Purchased Assets for the Debtors' estates.   The Debtors believe that the Bid Protections will not chill bidding for the Purchased Assets and do not unduly burden their estates.   Accordingly, the Debtors submit that this Court should approve the Bid Protections, subject to the terms and conditions described herein.

<b><u>ASSUMPTION AND ASSIGNMENT; CURE AMOUNTS</u></b>

46.     Pursuant to the Sale Motion, the Debtors seek to assume and assign, pursuant to section 365 of the Bankruptcy Code, those assigned contracts and leases identified by the Successful Bidder as may be selected in accordance with the Bidding Procedures (the "**Assigned Contracts and Leases**").   **Within ten (10) business days after entry of the Bidding Procedures Order**, the Debtors shall serve a notice (the "**Assignment Schedule Notice**") on all counterparties to all executory contracts and leases to which the Debtors are a party, which shall include (i) a schedule (the "**Assignment Schedule**") identifying all executory contracts and leases to which the Debtors are a party and specifying the cure amounts (the "**Cure Amounts**") necessary to assume and assign such executory contracts and leases, and (ii) a written notification that such executory contracts and leases may be assumed and assigned by the Debtors and that failure to file a timely objection to such Assignment Schedule Notice shall constitute deemed consent to such assumption and assignment of such party's executory contract

or unexpired lease, as may be selected and identified by the Purchaser or other Successful Bidder.  The Debtors and any Successful Bidder shall reserve the right to add or delete contracts or leases from the Assignment Schedule prior to the Closing.

47.    Except as may otherwise be agreed to by the parties to an Assigned Contract or Lease, at the Closing of the Sale, the Successful Bidder shall cure those defaults under the Assigned Contracts or Leases that need to be cured in accordance with section 365(b) of the Bankruptcy Code, by payment of the Cure Amounts.

48.    Objections, if any, to the proposed assumption and assignment of the Assigned Contracts and Leases, including, but not limited to, objections relating to adequate assurances of future performance or the Cure Amounts, must (a) be in writing and filed with this Court and served upon the following **on or before three (3) business days prior to the Sale Hearing**:  (i) counsel to the Debtors, Frost Brown Todd LLC, Attn:  Paige L. Ellerman, Esq., 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202 (pellerman@fbtlaw.com); (ii) the sales advisor to the Debtors, Energy Ventures Analysis, Inc., Attn:  Emily Medine (emedine@evainc.com) (iii) counsel to the DIP Agent and Prepetition Agent, Greenberg Traurig, LLP, Attn: Nancy Mitchell (mitchelln@gtlaw.com) and Matthew Hinker (hinkerm@gtlaw.com), MetLife Building, 200 Park Avenue, New York, NY 10166, as well as Dinsmore & Shohl LLP, Attn: Patrick D. Burns (patrick.burns@dinsmore.com), 255 East Fifth Street, Suite 1900, Cincinnati, OH 45202 (iv) counsel to the Committee, Barber Law PLLC, Attn:  Kent Barber (kbarber@barberlawky.com) , and (v) the Office of the United States Trustee for the Eastern District of Kentucky, Attn:  Rachelle Dodson, Esq., 100 E. Vine St., #500, Lexington, Kentucky 40507; and (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of this Court.

-28-

49.     Any counterparty to a contract or lease that is added to the Assignment Schedule shall have five (5) business days from the date of service of the notice of any supplemental Assignment Schedule Notice to object to the proposed assumption and assignment such contract or lease.   Any party failing to timely file an objection to the Cure Amounts set forth on the Assignment Schedules or to the proposed assumption and assignment of the Assigned Contracts and Leases, shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtors, their estates, and the Successful Bidder with respect to its executory contract(s) or unexpired lease(s) and will be deemed to consent to the proposed assumption and assignment of its executory contract(s) or unexpired lease(s).

50.     Where a party to an Assigned Contract or Lease files a timely objection asserting a higher cure amount than the Cure Amount and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by this Court.   All other objections to the proposed assumption and assignment of the Assigned Contracts and Leases will be heard at the Sale Hearing.

## **REQUEST TO SCHEDULE AUCTION**

51.     The Debtors propose that the Auction be scheduled at **10:00 a.m. (Eastern Time), on August 19, 2015 at the offices of Frost Brown Todd LLC, Lexington financial Center, 250 W. Main Stree, Suite 2800, Lexington, KY 40507-1749** (which time, date and location may be modified in accordance with the Bidding Procedures).   The Debtors believe this is sufficient time for the potential purchasers to conclude due diligence, comply with other requirements of the Bidding Procedures and determine whether to participate in the Auction.

-29-

## REQUEST TO SCHEDULE SALE HEARING AND OBJECTION DEADLINE

52.     The Debtors request that this Court schedule the Sale **Hearing on August 21, 2015**.

53.     The Debtors request that objections, if any, to the relief requested in the Sale Motion must:  (a) be in writing and filed with the Court; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; (c) set forth the names of the objecting party and the nature and the amount of any claim or interest alleged by such objecting party against the Debtors' estates or property; and (d) be served upon (such as to be **received** by) the following parties **on or before 12:00 p.m. (Eastern Time) on August 14, 2015**:  (i) counsel to the Debtors, Frost Brown Todd LLC, Attn:  Paige L. Ellerman, Esq., 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202 (pellerman@fbtlaw.com); (ii) the sales advisor to the Debtors, Energy Ventures Analysis, Inc., Attn:   Emily Medine (emedine@evainc.com) (iii) counsel to the DIP Agent and Prepetition Agent, Greenberg Traurig, LLP, Attn: Nancy Mitchell (mitchelln@gtlaw.com) and Matthew Hinker (hinkerm@gtlaw.com), MetLife Building, 200 Park Avenue, New York, NY 10166, as well as Dinsmore & Shohl LLP, Attn: Patrick D. Burns, 255 East Fifth Street, Suite 1900, Cincinnati, OH 45202 (patrick.burns@dinsmore.com), (iv) counsel to the Committee, Barber Law PLLC, Attn:  Kent Barber (kbarber@barberlawky.com) , and (v) the Office of the United States Trustee for the Eastern District of Kentucky, Attn:  Rachelle Dodson, Esq., 100 E. Vine St., #500, Lexington, Kentucky 40507.

## NOTICE OF MOTION; OPPORTUNITY TO OBJECT

54.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the Eastern District of Kentucky; (ii) counsel for the Official Committee of Unsecured

Creditors; (iii) the DIP Agent and its counsel; (iv) the Prepetition Agent and its counsel; (v) Bayside JW Resources, LLC; (vi) counsel for Bayside JW Resources, LLC; (vii) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, (i.e., GB Credit Partners, LLC, Bayside JW Resources, LLC, Bill Miller Equipment Sales, Inc., Komatsu Financial Limited Partnership); (viii) all parties to equipment leases with the Debtors to the extent reasonably known to the Debtors; (ix) all parties asserting a surety bond interest in the assets of the Debtors to the extent reasonably known to the Debtors, (i.e., Smith Manus Surety Bonds, Commonwealth of Kentucky, Energy and Environment Cabinet, Department of Natural Resources, Commonwealth of Kentucky, Energy and Environment Cabinet, Division of Mine Reclamation and Enforcement, Kentucky Utilities, Cumberland Valley Electric, Inc., United States of America, Department of the Interior, Bureau of Land Management, Bond Safeguard Insurance Co., Lexon Surety Group); (x) all parties asserting a taxing interest in the assets of the Debtors to the extent reasonably known to the Debtors, (i.e. Kentucky Department of Revenue, Kentucky Workers Compensation Fund, Kentucky Department of Natural Resources, Tennessee Department of Revenue, US Department of Treasury, and US Department of Interior-Office of Surface Mining); (xi) counsel to any party in pending litigation with the Debtors, (xii) and any regulatory authorities identified as having interests in the Purchased Assets, and (xiii) any parties on a master service list approved by the Court and consistent with Federal Rule of Bankruptcy Procedure 2002.

Objections, if any, to this Motion must: (a) be in writing and filed with this Court; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; (c) set forth the names of the objecting party and the nature and the amount of any claim or interest alleged by such objecting party against the Debtors' estates or property; and (d) be served upon (such as

to be **received** by) the following parties **by July 23, 2015**:  (i) counsel to the Debtors, Frost Brown Todd LLC, Attn:  Paige L. Ellerman, Esq., 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202 (pellerman@fbtlaw.com); (ii) the sales advisor to the Debtors, Energy Ventures Analysis, Inc., Attn:  Emily Medine (emedine@evainc.com) (iii) counsel to the DIP Agent and Prepetition Agent, Greenberg Traurig, LLP, Attn: Nancy Mitchell (mitchelln@gtlaw.com) and Matthew Hinker (hinkerm@gtlaw.com), MetLife Building, 200 Park Avenue, New York, NY 10166, as well as Dinsmore & Shohl LLP, Attn: Patrick D. Burns (patrick.burns@dinsmore.com), 255 East Fifth Street, Suite 1900, Cincinnati, OH 45202,  (iv) counsel to the Committee, Barber Law PLLC, Attn:  Kent Barber (kbarber@barberlawky.com) , and (v) the Office of the United States Trustee for the Eastern District of Kentucky, Attn: Rachelle Dodson, Esq., 100 E. Vine St., #500, Lexington, Kentucky 40507.

## NOTICE OF HEARING

**Notice is hereby given that the foregoing Motion will be heard by the Court on July 28, 2015 at 9:00 a.m. (ET) or as soon thereafter as counsel may be heard in the United States Bankruptcy Court, Second Floor Courtroom, 100 East Vine Street, Lexington, Kentucky 40507.**

## CONCLUSION

The Debtors submit that the approval of the Bidding Procedures, as proposed herein, will allow the Debtors to sell the Purchased Assets and assume and assign the Assigned Contracts and Leases for the maximum benefit of their creditors.  The Debtors believe that the procedures for authorizing the Sale of the Purchased Assets and the assumption and assignment of the Assigned Contracts and Leases described herein are in the best interests of their creditors and other interested parties and will facilitate and expedite the sale process for the benefit of all

creditors in these cases.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order (i)

approving the Bidding Procedures set forth herein; (ii) scheduling the Auction as requested; (iii)

scheduling the Sale Hearing; (iv) approving the form and matter of Notice of the Sale; and (v)

granting the Debtors such other and further relief as this Court deems just and appropriate under

the circumstances.

Dated:  July 14, 2015                                     Respectfully submitted,

                                              FROST BROWN TODD LLC
                                        By:    */s/ Paige L. Ellerman*
                                              Ronald E. Gold, Esq.
                                              (Ohio Bar No. 0061351)
                                              Douglas L. Lutz, Esq.
                                              (Ohio Bar No.0064761)
                                              Paige L. Ellerman, Esq.
                                              3300 Great American Tower
                                              301 East Fourth Street
                                              Cincinnati, Ohio  45202
                                              Tel:  (513) 651-6800
                                              Fax:  (513) 651-6981
                                              E-mail:  rgold@fbtlaw.com
                                              E-mail:  dlutz@fbtlaw.com
                                              E-mail:  pellerman@fbtlaw.com

                                              -and-

                                              Adam R. Kegley, Esq.
                                              250 West Main Street, Suite 2800
                                              Lexington, KY 40507
                                              Tel:  (859) 231-0000
                                              E-mail:  akegley@fbtlaw.com

                                              **ATTORNEYS FOR
                                              DEBTORS AND DEBTORS-IN-
                                              POSSESSION**

0125904.0626809   4821-3102-9796v5